## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION

|  |  |
|---|---|
| APOLLO NO. 10 LIMITED and APOLLO NO. 14 LIMITED,<br><br>    Plaintiffs,<br><br>        v.<br><br>VEORIDE INC., CHASITY KING, individually and as next of friend of J.K. (a minor child), CHRISTOPHER EDD, HEIRS AND ESTATE OF JERRELL LEE WILLIAMS JR. AND DARLENE MCCARTY, SAMANTHA CRON as Personal Representative of the Estate of DARLENE SURPRENANT, BARBARA SURPRENANT as Personal Representative of the Estate of ROBERT SURPRENANT, THE CITY OF ST. PETERSBURG, FLORIDA, and DOES 1 through 50, inclusive,<br><br>    Defendants. | Case No.: _____ |

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW, Apollo No. 10 Limited and Apollo No. 14 Limited ("Underwriters"), by and through undersigned counsel, and hereby file this Complaint for Declaratory Judgment, respectfully showing this Court the following:

## **INTRODUCTION**

1.     Underwriters file this action to obtain a judicial determination and declaration that coverage is not available for the Underlying Actions (defined and discussed below) under three insurance policies issued to Defendant VeoRide, Inc. ("VeoRide").

2.     Underwriters are lead underwriters of the three relevant insurance policies issued to VeoRide. Specifically, Apollo No. 10 Limited is the lead underwriter of Commercial General Liability Insurance Policy No. B0595XR6303020, issued to VeoRide for the May 8, 2020 to May 8, 2021 Policy Period. Apollo No. 10 Limited and Apollo No. 14 Limited are the lead underwriters of Commercial General Liability Insurance Policy No. B0180PN2105508, issued to VeoRide for the April 22, 2021 to April 22, 2022 Policy Period. Apollo No. 10 Limited and Apollo No. 14 Limited are also the lead underwriters of Excess Liability Insurance Policy No. B0180PN2105510, issued to VeoRide for the April 22, 2021 to April 22, 2022 Policy Period (collectively, the "Policies," defined and discussed further below). True and correct copies of the Policies are attached hereto as Exhibits A through C respectively.

3.     VeoRide has been named as a defendant in four lawsuits seeking damages for bodily injuries or death suffered in automobile collisions and involving

VeoRide's dockless shared mobility scooters (the "Underlying Actions," defined and discussed further below).

4.      VeoRide sought coverage for the Underlying Actions under the Policies. Underwriters agreed to provide VeoRide with a defense against the Underlying Actions under an express reservation of rights, including the right to disclaim defense and indemnity coverage pursuant to the Policies' Absolute Automobile Liability Exclusion ("Absolute Auto Exclusion").

5.      The Absolute Auto Exclusion states:

It is hereby understood and agreed that this policy does not apply to "Bodily Injury" or "Property Damage" arising out of any circumstances directly or indirectly involving an "auto."

We will have no duty to defend the insured against any "Suit" under any circumstances directly or indirectly involving an "Auto."

Ex. A, Endorsement No. 23 (p. 38 of 50); Ex. B, Endorsement No. 23 (p. 29 of 48).

6.      As detailed further below, all of the Underlying Actions allege bodily injuries or death arising directly out of collisions with automobiles.

7.      Underwriters thus bring this action pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and Federal Rule of Civil Procedure 57, seeking a judicial determination that the Absolute Auto Exclusion bars coverage under the Policies for the Underlying Actions, such that Underwriters have no duty to defend or indemnify VeoRide or any other insured or additional insured in connection with the Underlying Actions.

## **PARTIES**

8.      Plaintiff Apollo No. 10 Limited is a private limited company organized under the laws of England and Wales, with its registered office located in London, United Kingdom.

9.      Plaintiff Apollo No. 14 Limited is a private limited company organized under the laws of England and Wales, with its registered office located in London, United Kingdom.

10.     Upon information and belief, Defendant VeoRide, Inc. is a corporation organized and existing under the laws of Delaware and Indiana with its principal place of business in the State of Illinois. VeoRide can be served with process through its registered agent located at the following address: 300 Colonial Center Parkway, Suite 100N, Roswell, Fulton County, Georgia 30076. VeoRide is subject to the venue and jurisdiction of this Court as at all relevant times mentioned herein it was and is doing business in the State of Georgia.

11.     Defendant Chasity King is a natural person who, upon information and belief, resides in the State of Georgia. Ms. King is a nominal defendant in this declaratory judgment action against whom no affirmative relief is sought, although a declaration regarding insurance coverage will be binding on her with respect to the presence or absence of coverage under the Policies for her claims against VeoRide in the underlying *King* Action (defined and discussed below).

4

12.     Defendant Christopher Edd is a natural person who, upon information and belief, resides in the State of Georgia. Mr. Edd is a nominal defendant in this declaratory judgment action against whom no affirmative relief is sought, although a declaration regarding insurance coverage will be binding on him with respect to the presence or absence of coverage under the Policies for his claims against VeoRide in the underlying *Edd* Action (defined and discussed below).

13.     Defendants The Heirs and Estate of Jerrell Lee Williams Jr. and Darlene McCarty are, upon information and belief, residents of the State of California. The Heirs and Estate of Jerrell Lee Williams Jr. and Ms. McCarty are nominal defendants in this declaratory judgment action against whom no affirmative relief is sought, although a declaration regarding insurance coverage will be binding on them with respect to the presence or absence of coverage under the Policies for their claims against VeoRide in the underlying *Williams* Action (defined and discussed below).

14.     Defendants Samantha Cron, as Personal Representative of the Estate of Darlene Surprenant, and Barbara Surprenant, as Personal Representative of the Estate of Robert Surprenant, are natural persons who, upon information and belief, reside in the State of Florida. Ms. Cron and Ms. Surprenant are nominal defendants in this declaratory judgment action against whom no affirmative relief is sought, although a declaration regarding insurance coverage will be binding on them with

respect to the presence or absence of coverage under the Policies for their claims against VeoRide in the underlying *Surprenant* Action (defined and discussed below).

15.     Defendant The City of St. Petersburg, Florida ("St. Petersburg") is a Florida municipal corporation organized under Florida law. St. Petersburg is a nominal defendant in this declaratory judgment action against whom no affirmative relief is sought, although a declaration regarding insurance coverage will be binding on it with respect to the presence or absence of coverage under the Policies for its crossclaim for indemnification asserted against VeoRide in the underlying *Surprenant* Action.

16.     Defendants DOES 1 through 50 are individuals or entities who may qualify as insureds or additional insureds under one or more of the Policies, and, as such, may have an interest in the outcome of the present action. Underwriters do not know the true names and capacities of defendants named herein as DOES 1-50, and bring this action against those defendants under such fictitious names. Underwriters will amend the Complaint to identify the true names and capacities of DOES 1 through 50 when ascertained.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the amount in controversy exceeds $75,000 exclusive of interests and costs (as plaintiffs in the Underlying Actions for which VeoRide seeks

coverage assert damages in excess of $75,000), and there is complete diversity of citizenship between the plaintiffs and the defendants.

18.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) and Local Civil Rule 3.1(B)(3) because a substantial part of the events giving rise to the claim occurred in this district and division – specifically, two of the Underlying Actions (the *King* Action and *Edd* Action, discussed further below) are pending in the State Court of Fulton County, Georgia, and arise out of an alleged accident occurring in Fulton County.

## STATEMENT OF FACTS

**I.    The Underlying Actions**

**A.    The *King* Action**

19.    On or about May 8, 2022, Chasity King ("Plaintiff King"), individually and as next friend of J.K. (a minor child), filed a lawsuit against VeoRide and others in the State Court of Fulton County, Georgia – Civil Division, captioned *King v. City of Atlanta, et al.*, No. 22EV002715 ("*King* Action"). A true and correct copy of the Complaint in the *King* Action is attached hereto as Exhibit E.

20.    Plaintiff King alleges that, on June 29, 2021, J.K. and his uncle, Christopher Edd, were injured when the VeoRide scooter they were operating was struck by a power truck as they were proceeding through an intersection. *See* Ex. E, ¶¶12-15.

21.     The *King* Action alleges J.K. sustained serious head injuries in the collision with the truck that required hospitalization for 10 days. *See id.*, ¶16.

22.     The *King* Action seeks, among other things, past and future medical expenses, future lost wages, and damages for past and future mental and physical pain and suffering. *See id.*, Damages, ¶27.

### B.     The *Edd* Action

23.     On or about May 8, 2022, Christopher Edd ("Plaintiff Edd") filed a lawsuit against VeoRide and others in the State Court of Fulton County, Georgia – Civil Division, captioned *Edd v. City of Atlanta, et al.*, No. 22EV002716 ("*Edd* Action"). A true and correct copy of the Complaint in the *Edd* Action is attached hereto as Exhibit F.

24.     The *Edd* Action involves the same collision between the power truck and VeoRide scooter as the *King* Action, brought by J.K.'s uncle, Christopher Edd, for injuries he allegedly sustained in the June 29, 2021 collision. The factual allegations of the truck collision set forth in the *Edd* Action are identical to those of the *King* Action. *See* Ex. F, ¶¶10-15.

25.     Plaintiff Edd alleges he sustained serious injuries to his right knee, foot, and ankle that required extended hospitalization and physical therapy. *See id.*, ¶16.

26.    Plaintiff Edd seeks, among other things, past and future medical expenses, and damages for past and future mental and physical pain and suffering. *See id.*, Damages, ¶27.

**C.    The *Williams* Action**

27.    On or about July 13, 2023, the Heirs and Estate of Jerrell Lee Williams Jr. and Darlene McCarty ("Williams Plaintiffs") filed a lawsuit against VeoRide and others in the Superior Court of Los Angeles County, California, captioned *Heirs and Estate of Jerrell Lee Williams Jr., et al. v. VeoRide, Inc., et al.*, Case No. 23LBCV01317 ("*Williams* Action"). The Williams Plaintiffs filed a First Amended Complaint against VeoRide and unnamed doe defendants on or about October 16, 2023 ("Williams FAC"). A true and correct copy of the Williams FAC is attached hereto as Exhibit G.

28.    The Williams FAC alleges that, on July 17, 2021, Jerrell Williams ("Williams") suffered traumatic and fatal injuries when the VeoRide scooter he was operating was struck by a vehicle in Long Beach, California. *See* Ex. G, ¶¶6-8.

29.    The Williams Plaintiffs seek general and special damages, costs of suit, interest, and such further relief the court may deem equitable and proper. *See id.*, Prayer for Relief.

30.    On June 5, 2024, counsel for the Williams Plaintiffs sent a demand to VeoRide for full settlement of claims regarding the alleged wrongful death of

Williams ("*Williams* Demand," attached hereto as Exhibit H). The *Williams* Demand provides further details regarding the July 17, 2021 incident, alleging that Williams was struck by a vehicle owned and operated by Humberto Chavez, who was traveling at a rate of speed that was excessive given the prevailing traffic conditions and without a valid driver's license. *See* Ex. H, at p 2.

### D.    The *Surprenant* Action

31.    On or about December 31, 2022, Samantha Cron, as Personal Representative of the Estate of Darlene Surprenant, and Barbara Surprenant, as Personal Representative of the Estate of Robert Surprenant ("Surprenant Plaintiffs") filed a lawsuit in the Pinellas County, Florida Circuit Court against VeoRide and others in an action captioned *Cron, et al. v. Razor USA, LLC, et al.*, Case No. 2023-000002-CI ("the *Surprenant* Action") (together with the *King* Action, *Edd* Action, and *Williams* Action, the "Underlying Actions"). The Surprenant Plaintiffs filed a First Amended Complaint on or about September 11, 2023 ("Surprenant FAC"). A true and correct copy of the Surprenant FAC is attached hereto as Exhibit I.

32.    The Surprenant FAC alleges that, on April 9, 2021, Robert and Darlene Surprenant (the "Surprenants") were struck and killed by a truck while walking through an intersection near a designated parking area for VeoRide's and other defendants' shared electric mobility devices. *See* Ex. I, ¶¶22-25.

33.     Specifically, the Surprenant FAC alleges the Surprenants were attempting to cross an intersection in St. Petersburg, Florida, near a parking zone for electric scooters and bikes owned or maintained by VeoRide and other defendants. The presence of the parking zone filled with scooters, bikes, and tubular markings created an obstruction of the line of sight for motorists and pedestrians, including Michael Parker and the Surprenants, which prohibited or impaired their ability to see and perceive each other. As a result, Parker, who was driving a truck when the Surprenants were crossing the intersection, struck the Surprenants, who both subsequently died. *See id.*, ¶¶27-34.

34.     The Surprenant Plaintiffs seek damages, costs, interest, and such other relief the court deems just and proper. *See id.*, Jury Demand.

## II.     The Underlying Actions All Allege Bodily Injury Arising out of Automobile Collisions

35.     As detailed above, all of the Underlying Actions allege bodily injuries or death arising out of circumstances directly involving automobiles. Specifically:

  a. The *King* Action alleges J.K. was injured when the VeoRide scooter he was operating was struck by a power truck while proceeding through an intersection. *See* Ex. E, ¶¶12-15.

  b. The *Edd* Action alleges Plaintiff Edd was injured when the VeoRide scooter he was riding with J.K. was struck by a power truck while proceeding through an intersection. *See* Ex. F, ¶¶12-15.

    c.    The *Williams* Action alleges Williams died after being struck by an automobile while he was operating a VeoRide scooter. *See* Ex. G, ¶¶6-8; Ex. H, p. 2.

    d.    The *Surprenant* Action alleges the Surprenants died after being struck by a truck while crossing an intersection near a scooter/bike parking zone that obstructed the line of sight of both the Surprenants and the driver of the automobile that struck them. *See* Ex. I, ¶¶22-34.

## III.    The Policies

### A.    The Primary Policies

36.    Apollo No. 10 Limited is the lead underwriter of Commercial General Liability Insurance Policy No. B0595XR6303020, issued to VeoRide for the May 8, 2020 to May 8, 2021 Policy Period ("2020-21 Policy," attached hereto as Exhibit A).

37.    The 2020-21 Policy has limits of liability of $1 million Each Occurrence and a $2 million General Aggregate Limit, subject to a $250,000 Each Occurrence Self Insured Retention. *See* Ex. A, Risk Details (p. 1 of 50).

38.    Apollo No. 10 Limited and Apollo No. 14 Limited are the lead underwriters of Commercial General Liability Insurance Policy No. B0180PN2105508, issued to VeoRide for the April 22, 2021 to April 22, 2022 Policy Period ("2021-22 Policy," attached hereto as Exhibit B) (together with the 2020-21 Policy, the "Primary Policies").

39.     The 2021-22 Policy has limits of liability of $5 million Each Occurrence and a $5 million General Aggregate Limit, subject to a $500,000 Each Occurrence Self Insured Retention. *See* Ex. B, Risk Details (p. 1 of 48).

40.     The Primary Policies both incorporate Commercial General Liability Form (Occurrence) – CGL 00 01 04 13 ("CGL Form," attached hereto as Exhibit D). *See* Ex. A, Risk Details, Conditions (p. 1 of 50); Ex. B, Risk Details, Conditions (p. 1 of 48).

41.     The CGL Form incorporated into the Primary Policies provides, in relevant part:

**SECTION I – COVERAGES**

**Coverage A – Bodily Injury and Property Damage Liability**

**1.      Insuring Agreement**

    **a.**      We will pay those sums that the Insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the Insured against any "suit" seeking those damages. However, we will have no duty to defend the Insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply….

    **b.**      This insurance applies to "bodily injury" and "property damage" only if:

        **(1)**      the "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; [and]

(2)   the "bodily injury" or "property damage"
        occurs during the policy period[.]

Ex. D, Section I.1.

42.    The CGL Form incorporated into the Primary Policies defines "bodily injury" to mean "bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time." *Id.*, Section V – Definitions, 3.

43.    "Occurrence" means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.*, Section V – Definitions, 13.

44.    "Suit" means, in relevant part, "a civil proceeding in which damages because of 'bodily injury,' 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged." *Id.*, Section V – Definitions, 18.

45.    "Coverage territory" includes "The United States of America (including its territories and possessions), Puerto Rico and Canada." *Id.*, Section V – Definitions, 4.

46.    The Primary Policies contain an "Absolute Automobile Liability Exclusion," which states:

> It is hereby understood and agreed that this policy does not apply to "Bodily Injury" or "Property Damage" arising out of any circumstances directly or indirectly involving an "auto".
>
> We will have no duty to defend the insured against any "Suit" under any circumstances directly or indirectly involving an "Auto".

14

Ex. A, Endorsement No. 23 (p. 38 of 50); Ex. B, Endorsement No. 23 (p. 29 of 48) (hereinafter, "Absolute Auto Exclusion").

47.     The CGL Form incorporated into the Primary Policies defines "Auto" to include "a. A land vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged." Ex. D, Section V – Definitions, 2.

### B.     The 2021-22 Excess Policy

48.     Apollo No. 10 Limited and Apollo No. 14 Limited are the lead underwriters of Excess Liability Insurance Policy No. B0180PN2105510, issued to VeoRide for the April 22, 2021 to April 22, 2022 Policy Period ("2021-22 Excess Policy," attached hereto as Exhibit C) (together with the Primary Policies, the "Policies").

49.     The 2021-22 Excess Policy has limits of liability of $5 million Each Occurrence and a $5 million General Aggregate Limit, in excess of the limits of liability and $500,000 Each Occurrence Self Insured Retention of the 2021-22 Policy, subject to a 50% coinsurance obligation. *See* Ex. C, Declarations, Items 3 and 4 (p. 1 of 22); Endorsement No. 1, Schedule of Underlying Policy(ies) (p. 6 of 22); Coinsurance Clause (p. 15 of 22).

50.     The 2021-22 Excess Policy's Insuring Agreement provides:

The Company . . . hereby agrees, subject to the limitations, terms and conditions contained herein, to pay all sums which the Insured shall be obligated to pay by reason of the liability arising out of the hazards covered by and as more fully defined in the Lead Underlying Policy (as stated in Item 2.a) of the Declarations and hereinafter referred to as "Lead Underlying Policy"); provided always however, that this Policy shall not apply until the Underlying Insurers (as stated in Items 2.c) and 2.d) of the Declarations and hereinafter referred to as "Underlying Insurers") have paid or have been held liable to pay the full amount of their respective Limit(s) of Liability in accordance with Insuring Agreement 2.

The Company further agrees that this Policy will follow the same terms, definitions, exclusions and conditions (except as otherwise provided herein) as are, at inception hereof, contained in the Lead Underlying Policy.

*Id.*, Insuring Agreements, 1. Coverage (p. 4 of 22).

51.     The 2021-22 Excess Policy defines the "Lead Underlying Policy" to be Policy No. B0180PN2105508, which is the 2021-22 Policy. *See id.*, Declarations, Item 2.a). *See also* Ex. B., Risk Details, Unique Market Reference (p. 1 of 48).

52.     Because the 2021-22 Excess Policy, by its terms, follows the same terms, definitions, exclusions, and conditions of the 2021-22 Policy, it follows the terms of the Absolute Auto Exclusion contained in the 2021-22 Policy.

### C.     Reservation of Rights

53.     Underwriters agreed to provide VeoRide with a defense in connection with the Underlying Actions subject to a full reservation of rights, including, but not limited to, the right to deny defense and indemnity coverage for the Underlying

Actions pursuant to the Absolute Auto Exclusion. True and correct copies of those letters are attached hereto as Exhibits J through L respectively.

## COUNT I – DECLARATORY JUDGMENT

### There is No Coverage Under The Policies for the Underlying Actions Pursuant to the Absolute Auto Exclusion

54.     Underwriters repeat and incorporate herein by reference paragraphs 1 through 53 of this Complaint as if fully set forth herein.

55.     An actual case or controversy exists between the parties concerning whether the Policies provide coverage for the claims in the Underlying Actions.

56.     The Polices contain an Absolute Auto Exclusion, which states:

It is hereby understood and agreed that this policy does not apply to "Bodily Injury" or "Property Damage" arising out of any circumstances directly or indirectly involving an "auto".

We will have no duty to defend the insured against any "Suit" under any circumstances directly or indirectly involving an "Auto".

Ex. A, Endorsement No. 23 (p. 38 of 50); Ex. B, Endorsement No. 23 (p. 29 of 48); Ex. C, Insuring Agreements, 1. Coverage (p. 4 of 22).

57.     "Bodily injury" means "bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time." Ex. D, CGL Form, Section V – Definitions, 3.

58.     "Auto" is defined, in pertinent part, to mean "a. A land vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery

or equipment; or b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged." *Id.*, Section V – Definitions, 2.

59.    Pursuant to the foregoing, defense and indemnity coverage for a "suit" alleging "bodily injury" arising out of any circumstances directly or indirectly involving an "auto" is barred under the Policies pursuant to the Absolute Auto Exclusion.

60.    All of the Underlying Actions allege "bodily injury" arising out of circumstances directly involving an "auto." Specifically,

   a.    The *King* Action alleges J.K. was injured when the VeoRide scooter he was operating was struck by a power truck while proceeding through an intersection. *See* Ex. E, ¶¶12-15.

   b.    The *Edd* Action alleges Plaintiff Edd was injured when the VeoRide scooter he was riding with J.K. was struck by a power truck while proceeding through an intersection. *See* Ex. F, ¶¶12-15.

   c.    The *Williams* Action alleges Williams died after being struck by an automobile while he was operating a VeoRide scooter. *See* Ex. G, ¶¶6-8; Ex. H, p. 2.

   d.    The *Surprenant* Action alleges the Surprenants died after being struck by a truck while crossing an intersection near a scooter/bike parking zone that obstructed the line of sight of both the Surprenants and the driver of the automobile that struck them. *See* Ex. I, ¶¶22-34.

61.    Therefore, the Absolute Auto Exclusion in the 2020-2021 Policy bars coverage for the *Surprenant* Action under the 2020-21 Policy.

62.     Therefore, the Absolute Auto Exclusion in the 2021-2022 Policy bars coverage for the *King* Action, *Edd* Action, and *Williams* Action under the 2021-22 Policy and 2021-22 Excess Policy (which follows form to the 2021-22 Policy).

63.     Because the Absolute Auto Exclusion applies to bar coverage under the Policies for the Underlying Actions, Underwriters are entitled to a declaratory judgment that they have no duty to defend or indemnify VeoRide in connection with the Underlying Actions and that VeoRide is not entitled to coverage under the Policies.

64.     Because the Absolute Auto Exclusion applies to bar coverage under the Policies for the Underlying Actions, Underwriters are entitled to a declaratory judgment that they have no duty to defend or indemnify any other insured or additional insured in connection with the Underlying Actions and that coverage is not available to any other insured or additional insured under the Policies for the Underlying Actions.

## **<u>REQUEST FOR RELIEF</u>**

**WHEREFORE**, Underwriters respectfully request that this Honorable Court:

(a)     Issue a declaratory judgment that Underwriters have no duty to defend VeoRide in the Underlying Actions;

(b)     Issue a declaratory judgment that Underwriters have no duty to indemnify VeoRide for the Underlying Actions;

(c)     Issue a declaratory judgment that Underwriters have no duty to defend any other insured or additional insured in the Underlying Actions;

(d)     Issue a declaratory judgment that Underwriters have no duty to indemnify any other insured or additional insured for the Underlying Actions;

(e)     Award Underwriters their costs incurred herein; and

(f)     Award such further relief as this Honorable Court deems just and appropriate.

August 27, 2024                              Respectfully submitted,

**TROUTMAN PEPPER HAMILTON SANDERS LLP**

*/s/ Crighton T. Allen*
Crighton T. Allen
Georgia Bar No. 513249
Troutman Pepper Hamilton Sanders LLP
Bank of America Plaza
600 Peachtree Street NE
Atlanta, GA 30308
Tel: 404.885.3000
crighton.allen@troutman.com

Kevin F. Kieffer (*pro hac vice* forthcoming)
Matthew E. Elmaraghi (*pro hac vice* forthcoming)

Troutman Pepper Hamilton Sanders LLP
5 Park Plaza, Suite 1400
Irvine, CA 92614
Tel: 213.928.9877
kevin.kieffer@troutman.com
Matthew.elmaraghi@troutman.com

*Attorneys for Plaintiffs Apollo No. 10*
*Limited and Apollo No. 14 Limited*